Justin T. Toth (8438)
Arthur B. Berger (6490)
Samuel C. Straight (7638)
Maria E. Heckel (10761)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P. O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone:  (801) 532-1500
Facsimile:   (801) 532-7543

*Attorneys for Plaintiff Young Living Essential Oils, LC*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| YOUNG LIVING ESSENTIAL OILS, LC, a Utah limited liability company<br><br>        Plaintiff,<br><br>v.<br><br>doTERRA, INC, a Utah corporation, doTERRA INTERNATIONAL, LLC, a Utah limited liability company, doTERRA HOLDINGS, LLC, a Utah limited liability company, and JOHN DOES 1-10,<br><br>        Defendants. | **COMPLAINT**<br><br>Case No. _____<br><br>Judge _____<br><br><br>**(Jury Trial Demanded)** |

Plaintiff Young Living Essential Oils, LC ("Young Living" or "Plaintiff") hereby

complains against defendants doTERRA, Inc., doTERRA International, LLC, and doTERRA

Holdings, LLC ( collectively "doTERRA"), and Does 1-10 (collectively, with doTERRA,

"Defendants") and alleges as follows:

## INTRODUCTION

1.      Young Living brings this action against doTERRA, a competitor in the sale and marketing of therapeutic quality essential oils formed by former executives of Young Living, for false advertising because doTERRA falsely claims that its essential oils are of natural plant origins and "100% pure."  Testing of doTERRA essential oils by independent laboratories shows that, contrary to doTERRA's widespread claims that its essential oils are 100% pure with no fillers or additives and are "Certified Pure Therapeutic Grade," doTERRA's essential oils in fact are adulterated with man-made synthetic compounds and unlisted ingredients that unnaturally sweeten or otherwise alter the aroma and profile of the oils and/or make its oils less expensive to produce.

2.      doTERRA's false advertising concerning the natural origins and purity of its essential oils, combined with its disparagement of the purity of Young Living's oils, has caused significant harm to Young Living.  doTERRA has obtained a segment of the market for essential oils that it would not have obtained if it had truthfully disclosed the characteristics of its products—including that the sweetness of the aromas of its essential oils is not a marker of product purity (as it claims), but instead a result of the adulteration of its essential oils with synthetic chemicals.  Accordingly, Young Living seeks monetary damages and/or doTERRA's ill-gotten profits, in addition to injunctive relief, statutory damages, and costs and attorneys fees.

## SUBJECT MATTER JURISDICTION

3.      This Court has subject matter jurisdiction over the federal law claims in this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331. The Court has subject matter jurisdiction over the related Utah state law claims pursuant to 28 U.S.C. § 1367.

**VENUE**

4.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391.

**PARTIES AND PERSONAL JURISDICTION**

5.      Young Living is a Utah limited liability company with its principal place of business in Lehi, Utah.  Young Living was formerly known as Aromatic Research and Technology, LC, d/b/a Young Living Essential Oils.

6.      doTERRA, Inc., is a Utah corporation with its principal place of business in Orem, Utah.  doTERRA was formerly known as Thrive Holdings, Inc. and as Thrive II, Inc.

7.      On information and belief, doTERRA International, LLC, is a Utah limited liability company with its principal place of business in Orem, Utah.

8.      On information and belief, doTERRA Holdings, LLC, is a Utah limited liability company with its principal place of business in Orem, Utah.

9.      Together, doTERRA, Inc., doTERRA International, LLC, and doTERRA Holdings, LLC, are collectively defined as "doTERRA" for the purpose of this Complaint.

10.     doTERRA does business in interstate commerce including in Utah, it manufactures, licenses, and sells products, directly or indirectly, to residents of Utah, and/or has directed its activities at and injured Utah residents.

11.     Upon information and belief, John Does 1-10 are individuals and/or entities that have participated in, controlled, had the right to control, benefitted from, contributed to, aided and abetted, facilitated, are licensees, or are otherwise liable for the actions alleged herein, but whose identities are not presently known to Young Living.  As Young Living learns the identities of these John Doe defendants it will identify them by name.

3

## FACTUAL BACKGROUND

<u>Young Living's Business</u>

12.     Young Living was founded by Gary and Mary Young almost twenty years ago.

13.     Young Living manufactures essential oils and related products, which it markets and sells through a network of independent distributors, most of whom are also consumers of Young Living essential oils.

14.     Young Living currently has hundreds of thousands of independent distributors around the world.

15.     Young Living also owns and operates farms nationally and internationally where it grows many of the plants it uses to make its essential oils.  In Utah, Young Living owns and operates the 1,400 acre Young Living Farm in Mona, Utah.

16.     Essential oils are aromatic volatile liquids derived from plants.  They have many uses, including use in food flavoring, perfume industries, and in aromatherapy.

17.     Young Living specializes in the manufacture, sale, and marketing of essential oils of natural plant origin suitable for aromatherapy and wellness practices.

18.     Young Living sells a variety of individual essential oils, including lavender, peppermint, and frankincense oils.  It also sells proprietary combinations of essential oils and products made with essential oils.

<u>doTERRA's Business</u>

19.     doTERRA is a company created by a group of former executives and high-level employees of Young Living to compete directly with Young Living by marketing and selling

competing essential oils bearing its doTERRA label through a competing network of independent distributors.

20.    Unlike Young Living, doTERRA does not own or operate the farms from which the essential oils bearing its label are produced.

21.    The former Young Living executives and employees who formed doTERRA, and/or left Young Living to join doTERRA, include Young Living's former Chief Operating Officer, David Stirling, Young Living's former Director of Scientific Education and Support, David Hill, Young Living's former Senior Director of New Market Development, Greggory Cook, Young Living's former board member and executive assistant, Emily Wright, Young Living's former Regional Business Director (Western Region), Justin Harrison, and Young Living's former Director of Events, Lillian Shepherd.

22.    doTERRA's business has expanded rapidly.  It now claims to have established a network of more than 100,000 independent distributors throughout the United States and internationally.

23.    In the spring of 2013, doTERRA obtained government tax incentives to build a new $60 million dollar headquarters in Utah County.

24.    A significant driver of doTERRA's expansion has been doTERRA's solicitation of Young Living distributors and consumers away from Young Living.

25.    The instant Complaint is concerned with false advertisements by which doTERRA has wrongfully lured and continues to wrongfully lure Young Living distributors and customers to switch to doTERRA and by which doTERRA unfairly competes with Young Living for prospective distributors and customers.

<u>doTERRA Advertises Its Products As 100% Pure and
Unadulterated with Synthetic Chemicals</u>

26.     doTERRA's key pitch in its sales of its essential oils to the Young Living

distributors and customers it targets with solicitations, as well as to the general public, is a (false)

assertion that doTERRA's essential oils are of superior purity to those sold by Young Living and

other competitors.

27.     doTERRA claims on its websites, including www.doterra.com,

www.doterraeveryday.com, http://doterrablog.com, and www.doterratools.com, among others,

which it directs to potential distributors and customers both throughout the United States and

internationally, that doTERRA creates "100% Pure" "Certified Pure Therapeutic Grade®

essential oils" which "represent the safest, purest, and most beneficial essential oils available

today."

28.     doTERRA's websites claim that many other companies' essential oils labeled

"therapeutic grade" "are devoid of therapeutic value due to impurities."

(www.doterraeveryday.com.)

29.     doTERRA claims that, "[m]any [products claiming to be or to contain essential

oils] do not use 100% pure essential oils and often use fragrant synthetic chemical substitutes to

dilute or replace more expensive essential oil extracts." *Id.*  (www.doterra.com.)

30.     doTERRA's websites also advertise that "aroma is an excellent indication of true

purity," and it (falsely) claims that the noticeably "sweet" or "extremely pleasing fragrances" of

its essential oils are markers of purity and the highest quality, i.e., "having a fragrance that

exceeds that of oils that have been diluted or synthetically produced." *Id.*

31.     doTERRA also makes similar or identical claims in its marketing brochures, in its online videos, in its owners' and employees' presentations, and in communications directed to the distributors and customers of Young Living who are directly and indirectly solicited by doTERRA.  doTERRA also teaches these false advertisements to its national and international networks of distributors, who repeat these claims to the persons they solicit for doTERRA.

32.     doTERRA also specifically falsely advertises that Young Living is one of its competitors whose oils are likely adulterated.

33.     On information and belief, doTERRA owner Emily Wright has made statements in commercial presentations and in communications to individuals solicited by doTERRA in which she has alleged that she saw evidence of a lack of purity in Young Living's oils and that this discovery led to her departure from Young Living.

34.     doTERRA further encourages potential distributors and consumers to compare the sweeter and more pleasing fragrances of doTERRA essential oils with the fragrances of Young Living's oils and make a determination of the comparative purity of the oils for themselves based on doTERRA's (false) claims that the sweetness is a marker of oils that are not diluted or synthetically produced.  (*See, e.g.*, www.doterra.com.)

35.     Such advertisements alleging that doTERRA's essential oils are pure and Young Livings' essential oils are not pure are false.  In fact, as alleged in further detail below, doTERRA adulterates its "Certified Pure Therapeutic Grade" essential oils with synthetic chemicals to sweeten or otherwise make the aroma of its essential oils more pleasing and/or to reduce costs.

36.     A few of the many specific false statements doTERRA has made in advertising the purity of its essential oils are as follows:

a.      "doTERRA's therapeutic-grade essential oils are 100% pure natural aromatic compounds carefully extracted from plants.  They do not contain fillers or artificial ingredients that would dilute their active qualities." (www.doterra.com.)

b.      "doTERRA's Certified Pure Therapeutic Grade essential oils are guaranteed to be 100% pure and natural and free of synthetic compounds or contaminates."  *Id.*

c.      "The doTERRA brand and registered CPTG mark represent doTERRA's guarantee of 100% pure essential oil extracts that meet high standards for both purity and material composition and accurate product labeling."  *Id.*

d.      "We harvest our plants and quickly and carefully distill the aromatic compounds of the plants.  Other than testing for purity and composition, there is no other processing or manufacturing of the oils.  They contain are [sic] 100% pure aromatic compounds.  Nature did all the work; we just carefully remove the aromatic compounds and put them in the bottles.  Pure and simple!"  (www.doterraeveryday.com.)

e.      "Each oil provides the living essence of its source botanical, gently distilled from plants that are nurtured and carefully harvested throughout the world.  Each oil is 100% natural and passes strict standards of purity and potency."  (doTERRA's 2012-2013 Product Guide (online at www.doterratools.com).)

37.     In support of these and its other claims that its essential oils are 100% pure and superior to all other essential oils in the marketplace, doTERRA advertises at www.doterra.com

that "at a minimum, doTERRA's Certified Pure Therapeutic Grade® essential oils are cross tested using mass spectrometry and gas chromatography to ensure both extract purity and composition potency of each batch."

<u>doTERRA 's Advertisements Are False; Its Peppermint Oil Is Adulterated<br>with Synthetics to Alter the Natural Aromas and Flavor</u>

38.     In or about March 2013, Young Living asked independent European laboratory Institut des Sciences Analytiques to analyze certain doTERRA oils using gas chromatography-mass spectrometry ("GC-MS").

39.     GC-MS separates the component chemicals in each sample of essential oil and allows the laboratory to identify the chemical makeup of each essential oil.

40.     Service Central D'Analyse – Institut des Sciences Analytiques  ("SCA") tested three samples of doTERRA's peppermint oil bearing different lot numbers and expiration dates using GC-MS.

41.     Its lab test results found manmade synthetic chemical additive ethyl vanillin in doTERRA's peppermint oil.  The body of the report of the peppermint studies conducted by SCA is attached hereto as <u>Exhibit A and incorporated herein by reference</u>.

42.     Ethyl vanillin is a manmade compound that gives an intense vanilla aroma and sweet flavor.

43.     The detection of ethyl vanillin explains the noticeably sweet odor and flavor of doTERRA's peppermint essential oil.

44.     These test results demonstrate that all of doTERRA's statements concerning the natural origin and purity of its oils constitute false advertisements.

45.     On information and belief, peppermint essential oil is one of doTERRA's top selling essential oils.

46.     On information and belief, each of doTerra's blends containing peppermint oil also contain ethyl vanillin.

47.     doTERRA actively and willfully misleads consumers and distributors of essential oils concerning the reason its peppermint oil is sweeter.  Among other examples, Emily Wright has stated as follows:  "doTERRA's oils are much sweeter.  Our peppermint is a good example of that.  The Young Living peppermint has a very bitter note to it that burns the throat when swallowed.  doTERRA's peppermint is sweet and smooth when swallowed.  The reason for the sweetness has to do with the purity and the high menthol content due to the region in which it is grown. . . .  Most people are not used to pure peppermint, and they think it should smell weedy and bitter in order to be 'pure.'  This is not the case; rather the opposite is true.  A pure oil should smell smooth and clean and should be pleasing to the senses."

<u>doTERRA's "100% pure" Lavender Essential Oil Is Adulterated<br>with Synthetic Linalyl Acetate, Geranium, and Chamomile</u>

48.     In or about March 2013, SCA also analyzed three vials of doTERRA lavender essential oil bearing different lot numbers and expiration dates using GC-MS.

49.     Based on its tests of three vials of doTERRA's Lavender essential oils, SCA concluded that these lavender essential oils contain synthetic additive linalyl acetate.  The body of the report of the lavender studies conducted by SCA is attached hereto as <u>Exhibit B</u> and incorporated by reference.

50.     Synthetic linalyl acetate is widely used to create a lavender aroma at a lower cost than natural essential oil.

51.     Additionally, SCA found the same samples of doTERRA's lavender essential oil (which is marketed by doTERRA as 100% pure natural lavender) contain geranium and chamomile.  See Exhibit B.

52.     On information and belief, lavender essential oil is another of doTERRA's top selling essential oils.

53.     doTERRA again misleads consumers concerning the reason for the unusual aroma of doTERRA's essential oils.  With regard to the scent of doTERRA's lavender oils, doTERRA's website states as follows:  "Try this at home.  Compare the smell of doTERRA's *100% lavender essential oil* to another lavender oil or product in your home.  If your product's fragrance is overbearing in any one note, it may contain synthetic chemical substitutes.  A 100% pure therapeutic grade essential oil should have a balanced, broad fragrance profile and should smell crystal clean." (www.doterra.com (emphasis added).)

                doTERRA Falsely Advertises the Species of Its Frankincense Essential Oil

54.     doTERRA advertises that it sells frankincense essential oil from the species *Boswellia frereana.*

55.     Testing of doTERRA's Frankincense Oil completed on or about April 10, 2013, by SCA determined that doTERRA's frankincense oil is of the species *Boswelia carterii,* not *Boswelia frereana*, as advertised.  The body of the report of the frankincense essential oil studies conducted by SCA is attached hereto as Exhibit C and incorporated by reference.

56.     The species of frankincense oil is significant to consumers of frankincense essential oils because oils from the different species of frankincense have different properties and effects.

<u>doTERRA's Certified Pure Therapeutic Grade (CPTG) Designation</u>
<u>Is False and/or Misleading</u>

57.     doTERRA's use of the term "Certified Pure Therapeutic Grade" is also false and/or misleading and constitutes false advertising because it is used by doTERRA to represent to essential oils consumers that its oils are pure and that the purity of doTERRA's essential oils has been certified by a regulator or an independent third party.

58.     doTERRA's product guide states that doTERRA is committed to "producing our essential oil products to the highest standard of quality, purity, and safety used in the industry— CPTG Certified Pure Therapeutic Grade."  (doTERRA 2012-2013 Product Guide.)

59.     Upon information and belief, doTERRA and its distributors have at times misrepresented and/or knowingly perpetuated a false belief among doTERRA distributors and essential oil consumers that doTERRA essential oils are FDA certified or approved.

60.     In fact, "Certified Pure Therapeutic Grade" is a phrase that doTERRA has federally registered as a trademark and has used for marketing purposes.

61.     doTERRA's oils are not pure and are not certified pure by the FDA or any independent third party.

<u>doTERRA's False Advertisements Caused Significant Harm to Young Living</u>

62.     On information and belief, doTERRA has made other similar misrepresentations about the quality of its oils.

63.     On information and belief, further testing of additional doTERRA oils will reveal additional evidence of doTERRA's false advertising.

64.     The misrepresentations and false advertisements described herein have caused significant harm to Young Living.

65.     doTERRA does not compete on a fair playing field.  It has solicited Young Living distributors and consumers to switch to doTERRA essential oils based on its false advertisements that doTERRA's products are pure and Young Living's are not.

66.     Consumers and distributors of essential oils have relied on doTERRA's false advertisements concerning the purity of their products and the comparative impurity of Young Living's products when making purchasing decisions and decisions about which company to join as independent distributors.

67.     These consumers and distributors have also relied on doTERRA's misrepresentations that consumers can test the purity of Young Living and doTERRA essential oils for themselves and should select the essential oils with the sweeter and more pleasing odor (doTERRA's essential oils) because a pleasing odor indicates they are "pure."

68.     Through doTERRA's advertising contradicting the synthetic origin and adulterated nature of its essential oils, doTERRA has expanded its business and has obtained a significant segment of the market for essential oils.

69.     doTERRA has therefore obtained substantial profits of an amount to be proven at trial at Young Living's expense.  Its false advertisements have also done significant damage to Young Living's reputation and good will.

70.     Young Living continues to be harmed by doTERRA's unfair competition through doTERRA's false advertisements.

## FIRST CLAIM FOR RELIEF
### (False Advertising, 15 U.S.C. §1125(a))

71.     Young Living realleges and incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

72.     doTERRA sells and offers to sell essential oils advertised as "Certified Pure Therapeutic Grade," "100% pure," "natural aromatic products extracted from plants," "free of synthetic compounds or contaminates," and containing no "fillers or artificial ingredients," and other materially false statements.

73.     doTERRA's representations described above, which concern the purity of doTERRA's essential oils, were made in commercial advertising and/or promotion, including on their website, in their product magazines, and distributed through presentations to their distributors and a wide audience of current and potential essential oils consumers.

74.     doTERRA's representations described above, which concern the purity of doTERRA's essential oils, are literally false and/or misleading and misrepresent the nature, characteristics, and/or qualities of doTERRA products and/or commercial activities.

75.     doTERRA's representations described above, which allege that Young Living's essential oils lack purity and are therefore inferior vis a vis Young Living's essential oils and products, are also literally false and/or misleading and misrepresent the nature characteristics, and/or qualities of Young Living products and/or commercial activities.

76.     doTERRA's representations that its essential oils meet doTERRA's own alleged standards for therapeutic essential oils are also false and/or misleading.

77.     doTERRA's false and/or misleading descriptions and representations of fact are made in interstate commerce.

78.     doTERRA's representations concerning the natural origin and purity of their products and the comparative impurity of Young Living's products are material to the purchasing decisions of their current and potential customers and distributors in that such

individuals rely on these representations when making purchasing decisions and decisions about which company to join as an independent distributor.

79.     Young Living distributors also rely on these misrepresentations when they accept doTERRA's solicitations to move their distributorships from Young Living to its competitor doTERRA and begin soliciting additional distributors and customers for doTERRA.

80.     As a result of doTERRA's actions in commercial advertising and promotion, there is actual deception or at least a tendency to deceive a substantial portion of the intended audience.

81.     As an example of this actual deception and tendency to deceive the intended audience, doTERRA's false advertisements and misleading claims about the superior purity of doTERRA's Certified Therapeutic Grade essential oils are featured in documents published to the essential oils market by former distributors for Young Living who have been successfully solicited to act as distributors (and consumers of) doTERRA products.

82.     doTERRA's actions have, among other things, caused and are likely to continue to cause injury to Young Living and/or a loss in Young Living's goodwill, thus violating 15 U.S.C. § 1125(a).

83.     doTERRA's advertisements concerning its "pure" essential oils, combined with the evidence concerning its adulteration of its essential oils, gives rise to a strong inference that doTERRA's false and/or misleading advertising violations are willful and deliberate.

84.     doTERRA's false and/or misleading advertising has caused Young Living actual damages in the form of lost distributors and sales in an amount to be proven at trial.  Such damages should be trebled as allowed by 15 U.S.C. § 1117(a).

85.     Young Living is further entitled to recover doTERRA's profits, the amount of which is currently unknown to Young Living, and which amount should be trebled as allowed by 15 U.S.C. § 1117(a).

86.     This is an exceptional case pursuant to 15 U.S.C. § 1117(a), and Young Living is therefore entitled to recover its attorney fees from doTERRA.

87.     Pursuant to 15 U.S.C. § 1117(a), Young Living is also entitled to recover its costs of suit.

88.     Young Living is being irreparably harmed by doTERRA's false and/or misleading advertising, and Young Living has no adequate remedy at law.  Young Living is therefore entitled to injunctive relief barring doTERRA from engaging in further acts that violate 15 U.S.C. § 1125(a).

## SECOND CLAIM FOR RELIEF
### (Violation of Utah Unfair Practices Act, Utah Code Ann. § 13-5-2.5)

89.     Young Living realleges and incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

90.     doTERRA's literally false and/or misleading advertising concerning the purity of its essential oils and lack of purity of Young Living's essential oils, as alleged more fully above, constitutes an unfair method of competition proscribed by Utah Code Ann. § 13-5-2.5.

91.     doTERRA's literally false and/or misleading advertising concerning the purity of its essential oils and/or lack of purity of Young Living's essential oils caused distributors and customers to choose doTERRA essential oils over Young Living essential oils.

92.     doTERRA's actions have caused Young Living damages in an amount to be proven at trial.

93.     Under Utah Code Ann. § 13-5-14, Young Living is entitled to recover the greater of treble the amount of its actual damages or statutory damages as provided therein, plus its costs of suit.

94.     Young Living is being irreparably harmed by doTERRA's false and/or misleading advertising, and Young Living has no adequate remedy at law.  Young Living is therefore entitled to injunctive relief barring doTERRA from engaging in unfair methods of competition against Young Living.

**THIRD CLAIM FOR RELIEF**
**(Unfair Competition, Deceptive Advertising,**
**and Unfair Trade Practices Under Utah Common Law)**

95.     Young Living realleges and incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

96.     Through its actions described above, doTERRA is engaged in making false and deceptive statements about the purity of its products and false and deceptive statements concerning the purity of Young Living's products as a means to unfairly compete with Young Living.

97.     doTERRA's actions as described above constitute unfair competition, deceptive advertising, and unfair trade practices proscribed by the common law of the State of Utah.

98.     doTERRA's actions have caused Young Living damages in an amount to be proven at trial.

99.     In light of the wanton and willful nature of doTERRA's actions, Young Living is entitled to an award of exemplary and punitive damages against doTERRA.

100.    Young Living is also entitled to injunctive relief barring doTERRA from engaging in further acts of unfair competition, deceptive advertising, and unfair trade practices.

## FOURTH CLAIM FOR RELIEF
### (Tortious Interference with Existing and Prospective Economic Relations)

101.    Young Living realleges and incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

102.    doTERRA has interfered, and continues to interfere, with Young Living's existing and potential economic relations by making false statements about the purity of Young Living's products to Young Living's current and prospective distributors and other consumers as well as by making false statements about the alleged purity of doTERRA's products to entice distributors and other consumers to switch from Young Living's oils to doTERRA's oils.

103.    The actions of doTERRA have been taken for an improper purpose of inflicting injury on Young Living, and/or have been effected through the improper means of making false statements.

104.    doTERRA's interference with Young Living's existing and potential economic relations has caused Young Living damages in the form of lost distributors and other consumers, and sales in an amount to be proven at trial.

105.    In light of the willfulness of doTERRA's actions, Young Living is entitled to an award of exemplary and punitive damages against doTERRA.

106.    Young Living is being irreparably harmed by doTERRA's actions, and Young Living has no adequate remedy at law.  Young Living is, therefore, entitled to injunctive relief barring doTERRA from further interfering with Young Living's existing and prospective economic relations.

## FIFTH CLAIM FOR RELIEF
### (Cancellation of Federal Trademark Registrations)

107.     Young Living realleges and incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

108.     On information and belief, doTERRA Holdings, LLC, owns the following trademarks and United States trademark registrations, which are hereinafter collectively referred to as the "CPTG Trademark Registrations":

| Registration No. | Registration Date | Trademark |
| --- | --- | --- |
| 3,691,864 | October 6, 2009 | CPTG CERTIFIED PURE THERAPEUTIC GRADE |
| 3,688,786 | September 29, 2009 | CPTG CERTIFIED PURE THERAPEUTIC GRADE |
| 3,624,313 | May 19, 2009 | CPTG |
| 3,617,242 | May 5, 2009 | CPTG |

109.     On information and belief, doTERRA Holdings, LLC, licensed use of the trademarks that are the subject of the CPTG Trademark Registrations to doTERRA, Inc., and/or doTERRA International, LLC.

110.     On information and belief, doTERRA Holdings, LLC, has used the trademarks that are the subject of the CPTG Trademark Registrations in commerce directly and/or through these licensees.

111.     The CPTG Trademark Registrations, on their face and as used by doTERRA in commerce, deceptively, falsely, and misleadingly state and/or suggest that doTERRA's products bearing such trademarks are pure; that doTERRA has developed a certification standard and that its products meet that standard; that a governmental or other third party have approved or

19

provided the designation or otherwise "certified" the product; and/or that a governmental or other third party have created a standard that doTERRA's products supposedly meet, all of which claims are false.

112.    The CPTG Trademark Registrations are deceptive, falsely suggest a connection with governmental or other third party institutions, and are deceptively misdescriptive, and therefore not subject to federal registration pursuant to 15 U.S.C. § 1052(a), (e).

113.    The trademarks or the dominant features of the trademarks that the subject of the CPTG Trademark Registrations, namely the term CERTIFIED PURE THERAPEUTIC GRADE and the acronym CPTG, which is readily understood to mean and refer to CERTIFIED PURE THERAPEUTIC GRADE, describe an ingredient, quality, characteristic, function, feature, purpose, or use of doTERRA's goods.

114.    As a result, the CPTG Trademark Registrations are merely descriptive of doTERRA's goods and, because the CPTG Trademark Registrations have not developed secondary meaning, they are not subject to federal registration pursuant to 15 U.S.C. § 1052(e).

115.    Young Living has been and will be damaged by the continued existence on the federal register of the CPTG Trademark Registrations because, among other things, they wrongly give doTERRA an unfair and improper advantage in marketing its products and soliciting and recruiting distributors and customers.

116.    Accordingly, Young Living is entitled to a declaration that the CPTG Trademark Registrations are invalid and an order cancelling these Registrations.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Young Living demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Young Living respectfully prays for the following relief:

1.      That doTERRA, its officers, directors, members, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, distributors, and all others in active concert or participation with doTERRA or any of them, be enjoined from:

   a.      Directly or indirectly using or placing in commerce any advertising that misrepresents the nature, quality, or characteristics of doTERRA's products; and

   b.      Unfairly competing with Young Living in any manner whatsoever.

2.      That doTERRA be directed to file with the Court and serve on Young Living within thirty days after the service of any injunction order, a report in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction.

3.      For an order that doTERRA promulgate advertising to correct and/or prevent any consumer confusion or false representations they have created or made in the marketplace, and/or compensate Young Living for the advertising and other expenditures necessary to dispel any such consumer confusion or false representations.

4.      For an order that doTERRA cancel all pending orders for any products that were or are the subject of false and/or misleading advertising, including, without limitation, advertising that misrepresents the nature, quality, or characteristics of its products.

5.      That Young Living be awarded judgment for three times its actual damages, in an amount to be determined at trial.

6.      That doTERRA account to Young Living for doTERRA's profits arising from the acts complained of herein, and that Young Living be awarded treble doTERRA's profits, in accordance with the accounting demanded.

7.      That Young Living be awarded applicable statutory damages, in the event it so elects, and/or actual damages are not proven.

8.      That Young Living be awarded pre- and postjudgment interest.

9.      That Young Living be awarded its costs of suit, including reasonable expenses and attorneys fees.

10.     That Young Living be awarded exemplary and punitive damages.

11.     That the Court cancel the CPTG Trademark Registrations.

12.     That Young Living be awarded such other and further relief as the Court deems just and proper.

DATED this 19th day of June, 2013.

RAY QUINNEY & NEBEKER P.C.


 /s/ Arthur B. Berger
Justin T. Toth
Arthur B. Berger
Samuel Straight
Maria E. Heckel

*Attorneys for Plaintiff Young Living Essential Oils, LC*

Plaintiff's Address:

Young Living Essential Oils, LC
3125 Executive Pkwy
Lehi, UT  84043

1236664